IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARY MULLEN and KENNETH KRAUKLIS, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>) | |
| Plaintiffs, | )<br>) | Case No.: 15-cv-8725 |
| v. | )<br>) | |
| VOLKSWAGEN GROUP OF AMERICA, INC., | )<br>)<br>)<br>) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

Plaintiffs, MARY MULLEN and KENNETH KRAUKLIS, individually and on behalf of all others similarly situated, through their attorneys complain against Defendant, VOLKSWAGEN GROUP OF AMERICA, INC. ("VW"), as follows:

### Nature of the Case

1. This is a class action lawsuit seeking damages on behalf of all class members for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDBPA"), 815 ILCS § 505/1, *et seq.*, and the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*, relating to VW's misrepresentations regarding the level of emissions produced by vehicles containing diesel its "TDI clean diesel" engines, the compliance of those vehicles with applicable laws and regulations governing vehicle emissions, and the performance and fuel efficiency of those vehicles.

2. Since at least 2009, VW has manufactured and sold cars in the United States with its "TDI clean diesel" engines installed in various model cars, including the Jetta, Passat, Beetle, Golf, and Audi A3 models. Despite marketing the engines as "clean diesel," the engines were, in

fact, not clean and greatly exceeded emissions standards under normal driving conditions in violation of state and federal law.

3. VW concealed the fact that its diesel engines were producing and emitting excessive emissions from the government by manipulating the vehicles' software to activate certain emissions controls installed in the vehicles *only* when undergoing emissions testing. With these emissions controls activated, the vehicles were able to pass emissions testing. These emissions controls, however, are deactivated or bypassed during regular, non-emissions-testing driving. With the emissions controls deactivated or bypassed, vehicles containing "TDI clean diesel" engines emit up to forty times the amount of regulated gasses permitted by law. VW concealed these facts from consumers and misrepresented and warranted that its "TDI clean diesel" engines did meet applicable emissions standards.

## Jurisdiction

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 as the claim arises under the laws of the United States and § 1332(d) because the amount in controversy exceeds $5,000,000, exclusive of costs and interest, and minimal diversity exists as Plaintiffs and Defendant are citizens of different states.

5. Venue is proper in this District under 28 US.C. § 1391 because a substantial part of the events giving rise to these claims occurred in this District. Plaintiffs reside in and VW has advertised, marketed, sold and leased the vehicles at issue within this District.

## Parties

6. Plaintiff, Mary Mullen, is a citizen of Illinois.

7. Plaintiff, Kenneth Krauklis, is a citizen of Illinois.

8. Defendant, Volkswagen Group of America, Inc., is a New Jersey corporation, with its principal place of business located in Herndon, Virginia.

**Factual Background**

9. Vehicle emissions are regulated under federal law, specifically the Clean Air Act, 42 U.S.C. §§ 7401-7671q, and its implementing regulations, administered by the Environmental Protection Agency ("EPA"). Under the Clean Air Act and accompanying regulations, automobile manufacturers are required to install emission control devices to ensure that each diesel vehicle sold in the U.S. complies with Clean Air Act emissions standards during operation. Additionally, manufacturers are required to certify that such devices have been installed and are operative and that they meet the standards.

10. VW does business in all 50 states and in the District of Columbia. At all relevant times VW designed, manufactured, imported, distributed, sold, warranted, advertised and marketed vehicles containing its "TDI clean diesel" engine.

11. Between 2009 and the present VW installed software that allowed at least certain models of vehicles containing the "TDI clean diesel" engine including the Jetta, Golf, Beetle, Passat, and Audi A3 models to detect when the car was undergoing an emissions test and activate the pollution control devices installed in the vehicle allowing it to pass emissions tests and obtain EPA certification ("Defective Vehicles").

12. VW sold at least 482,000 Defective Vehicles in the U.S. since 2009.

13. When the vehicle is not undergoing an emissions test, the software wholly or partially turns off or bypasses the emission control devices required by the Clean Air Act. The result is that under normal driving conditions the federally required pollution control devices that control emissions from the "TDI clean diesel" engine are inoperative or greatly impaired.

14. VW illegally obtained EPA certification by using a "defeat device" that it did not disclose to the EPA. Automobiles equipped with "defeat devices" cannot be certified.

3

15. The EPA has found that this "defeat device" allows up to 40 times the allowed level of nitrous oxide to be emitted from the Defective Vehicles during non-testing use. Nitrous oxide reacts with volatile organic compounds in the atmosphere to produce ozone on hot summer days which, in turn, is a health hazard. Its emission is regulated by the EPA.

16. With the required emission control devices deactivated or bypassed, the Defective Vehicles are able to obtain significantly better performance and gas mileage. In other words, if the required emission control devices were fully operative, the performance (e.g. acceleration) and fuel efficiency in the Defective Vehicles would dramatically decrease.

17. VW marketed the vehicles containing a "TDI clean diesel" engine as "clean" and "green" vehicles. *See, e.g.,* **Group Exhibit A**. Further, VW marketed "TDI clean diesel" vehicles as emitting fewer harmful gases such as carbon dioxide ($CO_2$) than 80-93% of other vehicles. These were false representations on which the public, including Plaintiff, relied, in deciding whether to purchase a diesel engine vehicle.

18. VW has been ordered by the EPA to recall the above described vehicles and repair them so that they comply with emissions requirements during normal operation.

19. VW will not be able to make the above described vehicles comply with emissions standards without substantially degrading their performance and fuel efficiency.

20. Even if VW is able to comply with the EPA order, Plaintiffs and members of the putative classes have suffered and will suffer actual harm and damages because they paid a premium for a vehicle containing a "TDI clean diesel" engine but did not receive a vehicle that performed as advertised (i.e. that provided the performance and fuel efficiency of a diesel engine while meeting or exceeding emissions requirements). Further, once the emissions controls are activated, their vehicles will not perform as advertised and will no longer perform as they did when purchased or leased (i.e. the vehicles' performance and fuel efficiency will dramatically

decrease). This will result in a diminution in value of every Defective Vehicle, and it will cause owners to pay more for fuel while using their vehicles.

21. Further, Plaintiffs and members of the putative classes did not receive the "TDI clean diesel" engine they bargained for due to VW's misrepresentations and omissions. Nor did they receive a "green" or "clean" car.

22. As a result of VW's fraud and unfair, deceptive business practices, owners and lessees of Defective Vehicles have suffered and will continue to suffer economic loss.

23. In April 2013, Plaintiffs purchased a new 2013 Passat from Volkswagen of Orland Park, an authorized VW dealer. Plaintiffs recall seeing advertisements at the dealership as well as being told by the dealership that the vehicle was a low emission, high fuel efficiency vehicle with significantly more torque than the gas versions of the same model.

24. Prior to purchasing the vehicle, Plaintiffs also recalls seeing, hearing, and reading VW advertisements touting the added fuel efficiency and performance of the "TDI clean diesel" engines.

25. Plaintiffs selected and ultimately purchased their vehicle, in part, because of these representations made by VW.

26. None of the advertisements reviewed or representations received by Plaintiffs contained any disclosure relating to the fact that such fuel efficiency could not be achieved with the required emissions controls activated.

27. The vehicle Plaintiffs purchased, unknown to them at the time they purchased it, was equipped with an emissions control "defeat device" which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including nitrous oxide.

5

28. Neither VW nor any of its agents informed Plaintiffs of the existence of the "defeat device," its effects, or the defective design of the "TDI clean diesel" engine prior to purchase. Neither did VW or any of its agents inform Plaintiffs that VW had purposefully falsified its certification of EPA compliance. VW, however, purposefully used the "defeat device" and falsified its EPA compliance in order to obtain EPA certification. Consequently, Plaintiffs purchased their vehicle on the reasonable, but mistaken, belief that it complied with applicable emissions standards, was properly EPA-certified, and would retain all of its operating characteristics throughout its useful life.

29. Had VW disclosed that the "TDI clean diesel" engine in Plaintiffs' vehicle actually emitted up to 40 times the permitted levels of harmful gasses permitted, was not properly EPA-certified, and would not achieve the performance or fuel efficiency represented with the required emissions controls activated, they would not have purchased the vehicle or would have much paid less for the vehicle, if it could even have been legally sold.

30. Plaintiffs suffered an ascertainable loss as a result of VW's use of the "defeat device" as well as its misrepresentations and omissions associated with the "TDI clean diesel" engine and "defeat device," including, but not limited to, out-of-pocket loss, loss of performance, and diminished value of their vehicle.

## Tolling the Statute of Limitations

### Fraudulent Concealment

31. VW intentionally designed the "defeat device" into the Defective Vehicles' software. The EPA has described the device as a "sophisticated software algorithm" that detects when the vehicle in undergoing an emissions test.

32. The EPA began investigating emissions problems in certain of the Defective Vehicles in 2014. When the EPA contacted VW about the issue VW misled the EPA claiming

6

that the high emissions results were attributable to various technical issues and unexpected in-use conditions. Only when the EPA and California Air Resources Board persisted did VW admit, in 2015, that "it had designed and installed a defeat device in these vehicles in the form of a sophisticated software algorithm that detected when a vehicle was undergoing emissions testing." *See* EPA September 18, 2015 letter to VW (available at http://www3.epa.gov/otaq/cert/documents/vw-nov-caa-09-18-15.pdf).

33. Neither the "defeat device" nor VW's deception were discoverable by the Plaintiffs or members of the putative classes through the exercise of reasonable diligence within any applicable period of limitation.

34. Nor could Plaintiffs or members of the putative classes have known or learned through the exercise of reasonable diligence that VW had misled the EPA and falsely certified the required Certificate of Compliance as to each model of the Defective Vehicles.

35. Nor could Plaintiffs or members of the putative classes have known or learned through the exercise of reasonable diligence that VW had falsely advertised, marketed, and warranted the "TDI clean diesel" engine as having lower emissions than the vast majority of other vehicles, complying with all applicable emissions standards, and being "green" or "eco-conscious" vehicles.

36. Nor could Plaintiffs or members of the putative classes have known or learned through the exercise of reasonable diligence that the Defective Vehicles could only obtain the represented performance and fuel efficiency with the required emissions controls deactivated or bypassed.

37. Any applicable statute of limitation has therefore been tolled by VW's knowledge, active concealment, and denial of the facts alleged herein.

**Estoppel**

38. VW was and is under a continuous duty to disclose to Plaintiffs and members of the putative classes the true character, quality, and nature of the Defective Vehicles. VW actively concealed the true character, quality, and nature of the vehicles and knowingly made misrepresentations about their quality, reliability, characteristics, and performance. Plaintiffs and members of the putative classes reasonably relied upon VW's misrepresentations and omissions of these facts. Consequently, VW is estopped from asserting any statute of limitation defense.

**Discovery Rule**

39. The causes of action alleged herein did not accrue until Plaintiffs and members of the putative classes discovered or reasonably could have discovered their injuries.

40. Plaintiffs and members of the putative classes had no realistic ability to discern that their vehicles were defective until September 18, 2015, at the earliest, when the EPA's Notice of Violation became public.

41. Therefore, Plaintiffs and the putative classes' causes of action did not accrue until September 18, 2015.

**Class Allegations**

42. Pursuant to Federal Rule of Civil Procedure ("Rule") 23, Plaintiffs bring this class action and seeks certification of the claims and issues on behalf of a Nationwide Class defined as: All purchasers and lessees of vehicles containing a "TDI clean diesel" engine.

43. Additionally, Plaintiffs seek certification of an Illinois Class for VW's violations of the ICFDBPA defined as: All individuals or entities that purchased or leased vehicles containing a "TDI clean diesel" engine in Illinois.

44. The terms "Class" or "Class Members" refer to members of both classes unless specifically stated otherwise.

**Numerosity**

45. The Class is too numerous for individual joinder of all members to be practicable as half a million Defective Vehicles were sold in the U.S. between 2009 and 2015. Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. Class Members are readily identifiable from information and records in VW's possession, custody, or control.

**Typicality**

46. The claims of Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all Class Members, purchased or leased a Defective Vehicle designed, manufactured, marketed and distributed by VW. The representative Plaintiffs, like all Class Members, has been damaged by VW's misconduct. Furthermore, the factual basis of VW's misconduct is common to all Class Members and represents a common thread of misconduct resulting in injury to all Class Members.

**Adequacy**

47. Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective automotive products.

48. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of the Class.

**Commonality and Predominance**

49. There are numerous questions of law and fact common to Plaintiffs and Class Members that predominate over any question affecting only individual Class Members, the answers to which will advance resolution of the litigation as to all Class Members. These common legal and factual issues include:

- a. whether VW designed, advertised, marketed, distributed, leased, sold, or otherwise placed Defective Vehicles into the stream of commerce in the United States;
- b. whether the Defective Vehicles contained a "defeat device" designed to allow the vehicle to pass emissions tests but to violate emissions standards at other times;
- c. whether VW concealed the "defeat device";
- d. whether the VW falsely marketed the Defective Vehicles as "green" or "clean";
- e. whether VW falsely marketed the Defective Vehicles as emitting significantly less harmful gasses such as $CO_2$ than other vehicles;
- f. whether any future repair of the defect present in the Defective Vehicles will result in reduced value of those vehicles;
- g. whether any future repair of the defect present in the Defective Vehicles will result in higher fuel consumption;
- h. whether any future repair of the defect present in the Defective Vehicles will reduce the performance of those vehicles;
- i. whether VW omitted and failed to disclose material facts about the Defective Vehicles;
- j. whether VW's concealment of the true defective nature of the Defective Vehicles induced Plaintiffs and Class Members to act to their detriment by purchasing the Defective Vehicles;
- k. Whether Plaintiffs and Class Members overpaid for their Defective Vehicles; and
- l. whether VW violated the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*;
- m. whether VW violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*;
- n. whether the Defective Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability; and
- o. Whether Plaintiffs and the Class Members are entitled to damages and other monetary relief and, if so, in what amount.

50. VW has acted in a uniform manner with respect to the Plaintiffs and Class Members. Each Defective Vehicle is defective in the same way and Plaintiffs and the Class Members are and will be damaged in similar ways.

10

51. The claims asserted by Plaintiffs are typical of the claims of the members of the Class as the claims arise from the same course of conduct by VW, and the relief sought within the Class is common to all members.

52. There are no individual questions of liability.

### Superiority

53. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual class members' claims, it is likely that only a few Class Members could afford to seek legal redress for VW's misconduct. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

### COUNT I
### (Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act)

54. Plaintiffs repeat and reallege Paragraphs 1-53 herein.

55. At all relevant times, the ICFDBPA was in full force and effect in the State of Illinois and provides in relevant part as follows:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. 815 ILCS 505/2.

56. The ICFDBPA further provides:

> Any person who suffers actual damages as a result of a violation of this Act committed by any other person may bring an action against

11

such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper. 815 ILCS 505/10(a).

57. Plaintiffs and the Illinois Class are "consumers" within the meaning of 815 ILCS 505/1(e).

58. VW engaged in "trade" or "commerce" within the meaning of 815 ILCS 505/1(f).

59. VW violated the ICFDBPA when it represented, through advertising, warranties, and other express representations, that the Defective Vehicles had characteristics and benefits that they did not actually have.

60. VW violated the ICFDBPA when it falsely represented, through advertising, warranties, and other express representations, that the Defective Vehicles were of certain quality or standard when they were not.

61. VW violated the ICFDBPA by fraudulently concealing from and failing to disclose to Plaintiffs and the Illinois Class the defects associated with the Defective Vehicles.

62. VW violated the ICFDBPA by actively misrepresenting, concealing, and failing to disclose in its advertising, marketing, and other communications, material information regarding the Defective Vehicles material information including:

    a. that the Defective Vehicles were "green" and "clean" vehicles;
    b. that the Defective Vehicles emitted fewer harmful gases such as carbon $CO_2$ than 80-90% of other vehicles;
    c. the existence and effects of the "defeat device" present in the Defective Vehicles; and
    d. that the Defective Vehicles complied with the Clean Air Act and EPA regulations.

63. VW intentionally and knowingly misrepresented and/or concealed material facts regarding the Defective Vehicles with intent to mislead Plaintiffs and the Illinois Class.

64. VW's conduct as alleged herein constituted consumer fraud.

65. VW's conduct as alleged herein constituted an unfair business practice.

66. Had Plaintiffs and the Illinois Class known the material facts that VW misrepresented, concealed, and failed to disclose, they would not have purchased the Defective Vehicles or would have purchased the vehicles for far less, if the vehicles even could have been legally sold in such condition.

67. VW had a strong incentive to make the misrepresentations, omissions, and failures to disclose as alleged herein as it knew that consumers, like Plaintiffs and members of the Illinois Class, would not purchase the Defective Vehicles or would pay far less for such vehicles if they knew the truth.

68. The facts VW misrepresented, omitted, and failed to disclose were material in that a reasonable consumer, such as Plaintiffs and members of the Illinois Class, would have relied upon them in making a vehicle purchase decision.

69. Plaintiffs and the Illinois Class, pursuant to 815 ILCS 505/10a, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge VW's ill-gotten gains and to restore to Plaintiffs and any Class member any money paid for said vehicles.

70. VW's actions were willful and wanton justifying an award of punitive damages.

WHEREFORE, Plaintiffs, individually and on behalf of the Illinois Class, requests that this Court enter favor in their favor and against VW as follows:

A. Certify the requested class under Rule 23(b)(3);
B. Appoint Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel;
C. Award actual damages in an amount to be proven at trial;
D. Award punitive damages;
E. Award Plaintiffs their reasonable attorney's fees and costs; and
F. Award any additional relief the Court deems just.

## COUNT II
**(Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.)**

71. Plaintiffs repeat and reallege Paragraphs 1-70 herein.

72. Congress enacted the MMWA in 1975 in response to widespread complaints from consumers that many warranties were misleading and deceptive or simply were not being honored. To remedy this problem of failure to honor warranties, the MMWA imposes civil liability on any "warrantor" for, *inter alia*, failing to comply with any obligation under a written warranty. 15 U.S.C. § 2301(d)(1). The MMWA authorizes a "suit for damages and other legal and equitable relief." *Id*.

73. VW is a "warrantor" within the meaning of 15 U.S.C. § 2301(5).

74. Plaintiffs and members of the Nationwide Class are "consumers" within the meaning of 15 U.S.C. § 2301(3).

75. VW provides a written warranty with each of the Defective Vehicles that the vehicle complied with all applicable emissions requirements.

76. As required by federal law, VW also provided written "performance warranty" and a "design and defect warranty" that covers all emissions related parts for 2 years or 24,000 miles, with the catalytic converter, engine control unit, and onboard diagnostic device covered for 8 years or 80,000 miles (collectively "Federal Emissions Warranties"). 42 U.S.C. § 7541; *see* Emissions Warranties for 1995 and Newer Cars and Trucks (available at http://www3.epa.gov/otaq/regs/im/obd/pubs/420f09048.pdf). The Federal Emissions Warranty is directly applicable to the Defective Vehicles.

77. VW provides various other written warranties including a Limited New Car Warranty and a Powertrain Limited Warranty.

78. Because VW provided written warranties, VW cannot disclaim the implied warranties provided Plaintiffs and the Class. As described more fully above, VW impliedly warranted that the Defective Vehicles were merchantable and possessed specific performance

14

and emissions control characteristics that they, in fact, did not possess, and which VW knew they did not possess.

79. VW breached the written and implied warranties referenced in Paragraphs 75-76 and 78 by selling the Defective Vehicles with a "defeat device" rendering the emissions control systems defective, the vehicles not properly EPA certified, and the vehicles unable to comply with the applicable emissions standards. As a result of these defects, the Defective Vehicles are unmerchantable and unfit for their intended purpose. This defect cannot be repaired or redressed without materially altering the advertised performance and fuel efficiency of the Defective Vehicles.

80. VW's breach of its written and implied warranties has deprived Plaintiffs and the Class of the benefit of their bargain.

81. VW had an opportunity to disclose information concerning the Defective Vehicle's inability to perform as warranted and to cure its breach of warranties, but it did not. In fact, VW did not even acknowledge the existence of the "defeat device" or its effects until the EPA confirmed the existence of the "defeat device" and its effects.

82. Plaintiffs and the Class have been damaged by VW's breach of its warranties. As a direct and proximate result of VW's breaches, Plaintiffs and the Class have and will suffer actual economic damages.

83. Plaintiffs have provided notice to VW of the defects present in their vehicle. *See* **Exhibit B**.

WHEREFORE, Plaintiffs, individually and on behalf of the Nationwide Class, respectfully requests that the Court enter judgment in their favor and against VW as follows:

      A.    Certify the requested class under Rule 23(b)(3);
      B.    Appoint Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel;
      C.    Award actual damages in an amount to be proven at trial;

   D. Award Plaintiffs their reasonable attorney's fees and costs; and

   E. Award any additional relief the Court deems just.

## Demand for Jury Trial

  84. Pursuant to Rule 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

            MARY MULLEN and KENNETH KRAUKLIS, individually and on behalf of all others similarly situated

            By:  /s/ Peter S. Lubin
              One of their attorneys

Vincent L. DiTommaso
Peter S. Lubin
Andrew C. Murphy
DiTommaso ♦ Lubin, P.C.
17W 220 22nd Street, Suite 410
Oakbrook Terrace, IL 60181
(630) 333-0000
psl@ditommasolaw.com

Terrence Buehler
The Law Offices of Terrence Buehler
55 W. Wacker Dr., Suite 1400
Chicago, IL 60601
(312) 372-2209

16